UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| Tina Lewallen, § | Civil Action No. 1:05CV0733 | |
| Plaintiff, § | | |
| § | | |
| vs. § | | |
| § | | |
| § | | |
| The City of Beaumont, § | | |
| Defendant. § | **A Jury Is Demanded** | |

**Plaintiff's Supplemental Memo of Law Regarding the Admissibility of
Evidence About Other Incidents of Gender Discrimination**

As made clear in its objections to the plaintiff's proposed exhibits, as well as its motion in limine, the City seeks to exclude evidence about other incidents of gender discrimination in the Beaumont Police Department. To aid the Court in its assessment of the parties' respective legal arguments, the plaintiff submits this supplemental Memo of Law. She focuses particularly on the recent U.S. Supreme Court decision in *Mendelsohn v. Sprint*, 128 S.Ct. 1140 (2008). In previous submissions, the plaintiff addressed the heightened burden of proof under 42 U.S.C. § 1983, pursuant to which a city can be found liable for violations of the Equal Protection clause only when its actions were carried out pursuant to a governmental custom, policy or practice. *Monell v. Dept of Social Services*, 436 U.S. 658, 691 (1978).

**Anecdotal "Other Employee" Evidence Is Traditionally Admissible**

On February 26, 2008, the United States Supreme Court issued a unanimous decision in *Sprint/United Management Company v. Mendelsohn*, 128 S.Ct. 1140 (2008), holding: "The question whether evidence of discrimination by other supervisors is relevant [] is fact-based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Id*. at 1147. As the Court explained, "Applying Rule 403

to determine if evidence is prejudicial also requires a fact-intensive, context-specific inquiry." *Id*. at 1147. The simple holding of *Mendelsohn*, therefore, is that testimony by non-parties alleging discrimination "at the hands of supervisors of the defendant company who played no role in the adverse employment decision challenged by the plaintiff," is "neither *per se* admissible nor *per se* inadmissible." *Id*. at 1143.

This statement of the law is not new. The Fifth Circuit has often noted the admissibility of such evidence. In *Vance v. Union Planters Corp.*, 209 F.3d 438 (5th Cir. 2000), for example, the plaintiff properly introduced the evidence to show how Union Planters treated the class of women employees. The Fifth Circuit then observed that, in the context of a Title VII suit, evidence concerning an employer's "general policy and practice with respect to minority employment" may be relevant to any showing of pretext. Further, this evidence of past discrimination could help undermine defendant's argument that it chose not to hire Vance only because of administrative concerns. Finally, the Fifth Circuit noted that, because defendants had the opportunity to explore the evidence of prior acts through examination of its own witnesses, the admission of potentially damaging evidence was not reversible error. *See also Green v. Adm's of the Tulane Educ. Fund.*, 284 F.3d 642 (5th Cir. 2002) (sexual harassment case where evidence of three other sexual harassment complaints admissible); *Hatley v. Hilton Hotels Corp.*, 308 F.3d 473 (5th Cir. 2002) (sexual harassment case where evidence of other sexual harassment complaints admissible); *Shattuck v. Kinetic Concepts,* 49 F.3d 1106, 1109-110 (5th Cir. 1995) (evidence of discrimination against others in protected class may be highly probative).

More recently, the Fifth Circuit upheld the district court's admission of evidence of one white employee's 1992 conviction for a KKK-related criminal act in a racial harassment case. It

determined, after a review of the record, that the judge had carefully engaged in the proper FRE 403 balancing test:

> The court determined, after carefully considering both parties' arguments on the issue and the evidence in the case, that the probative value of the conviction evidence outweighed its prejudicial value. The court also made it clear that it would not tolerate "exaggerated discussion, questions and answers, over and over and over about the conviction of Mr. Moore.

*Abner v. Kan. City S. R.R. Co.*, 2008 U.S. App. LEXIS 27, 38-39 (5th Cir. January 2, 2008). *See also Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261(11th Cir. 2008) (testimony of other co-workers about discriminatory and retaliatory experiences were probative of both the decision-makers' intent to discriminate and the company's intent to retaliate against any black employee who complained about racial slurs in the workplace).

To the extent that the City argues that the other discriminatory events are remote in time, the case law nonetheless supports the admission of this evidence. This point is well-supported by the recent decision in *United States v. Walker*, 410 F.3d 754, 759 (5th Cir. 2005). There, the appellate court found no error in the district court's admission of a conviction in 1987 – while the crime at hand was committed in 2003, sixteen years later. Because intent was an issue, the defendant's state of mind was a critical element of both crimes. The court also cited other cases in which the use of "old" evidence was upheld on appeal. *See, e.g.*, *United States v. Hernandez-Guevara*, 162 F.3d 863, 872-73 (5th Cir. 1998) (eighteen years); *United States v. Chavez*, 119 F.3d 342, 346-47 (5th Cir. 1997) (fifteen years); *United States v. Broussard*, 80 F.3d 1025, 1040 (5th Cir. 1996) (ten years). The court also cautioned the jury as to the limited use of the convictions.

### *Per Se* Exclusions of Evidence Are Forbidden Under
### Article IV of the Federal Rules of Evidence – "Relevancy And Its Limits."

Contrary to the position taken by the employer in *Mendelsohn*, the Supreme Court issued an ironclad rule rejecting *per se* exclusion of evidence under the Federal Rules:

> We note that, had the district court applied a *per se* rule excluding the evidence, the Court of Appeals would have been correct to conclude that it had abused its discretion. Relevance and prejudice under Rules 401 and 403 are determined in the context of the facts and argument in a particular case, and thus are generally not amenable to broad *per se* rules.

128 S.Ct. at 1147. What this means is simple: there are no "categorical" exclusions of evidence regarding discrimination against other employees, or by other supervisors, found within the Federal Rules of Evidence. Article IV is entitled "Relevancy And Its Limits." And, where "categories" of evidence require limitations, explicit rules within Article IV say so.[1]

The Federal Rules "occupy the field" and require fact-based, case-by-case determinations, not artificial overlays such as the "same supervisor" rule the employer argued in *Mendelsohn* – and which some courts have followed.

### Rule 401 Provides A Liberal Standard For Admissibility: Any Tendency
### To Make A Fact Of Consequence More Or Less Probable.

Under Rule 401, evidence is relevant if it has "**any** tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis added). A "fact of consequence" may be "ultimate, intermediate or evidentiary . . . so long as it is of consequence to the determination of the action." (Advisory Committee Notes). Rule 401's standard is met if the evidence "only slightly affects the trier's assessment of the probability of the matter to be

---

[1] *See, e.g.,* Rule 407 ("Subsequent Remedied Measures"); 408 ("Compromise and Offers to Compromise").

proved." 2 **WEINSTEIN'S FED. EVID**. § 401.04[2][c][ii] (2d ed. 2007). And, as the Supreme Court explained, as to Rule 401, "The Rule's basic standard of relevance thus is a liberal one." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 587 (1993).

As the Advisory Committee Notes explain, this liberal standard is applicable to intermediate and evidentiary facts of consequence, not merely the "ultimate" fact question as to whether unlawful discrimination led to the challenged action. In almost every case in which an actor's intent is at issue, individual pieces of evidence provide "intermediate or evidentiary" facts of consequence, particularly on impeachment and pretext. "Individual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it. The sum of an evidentiary presentation may well be greater than its constituent parts." *Huddleston v. United States*, 485 U.S. 681, 691 (1988). "Sometimes . . . the proof is fragmented and consists of many facts. Alone, each has little or no probative force, but the whole (the conjunction of all of the facts) may almost impel a conclusion." 1 C. MUELLER & KIRKPATRICK, **Federal Evidence** § 4: 2 at 557 (3d ed. 2003).

### If Reasonable Minds Can Differ, the Jury (not the Court) Decides the Weight And Credibility Of Proffered Anecdotal Evidence

As to the evidence of other instances of gender discrimination the plaintiff offers, reasonable minds can differ on its weight. Some may find the City's failure to address the extensive evidence of gender discrimination reported by Capt. Ownby in 1993 ensured that such gender animus would endure for years thereafter. Some may find the evidence too remote to be of consequence. Some may find that the evidence that Dunlap exhibited a discriminatory attitude toward Captain Ownby in the late 1990s provides a window into his motive or intent with regard to selections for detective positions in CID in the early 2000s. Some may not. Some may find

that Chief Scofield's failure to show leadership about the problem of gender discrimination encouraged those who wished to exhibit gender animus did so freely, thus shoring up the Department's custom, policy or practice and/or that it discouraged female officers from reporting subsequent events of discrimination. Some, on the other hand, may conclude that Scofield's reluctance to take action on Captain Ownby's complaint was an isolated incident. Regardless of how the Court views this evidence, however, the point is that a jury might reasonably believe to the contrary.

Whatever contrary explanations or shortcomings the City might offer about the other employees' experiences does not affect admissibility, but must be sold to the jury: "Flaws affect weight, not relevance." 2 WEINSTEIN'S FEDERAL EVIDENCE, § 401.06, at 401-02. The case of *Robinson v. Runyon*, 149 F.3d 507 (6th Cir. 1998), states this rule plainly, while reversing the matter for a new trial due to evidentiary exclusions:

> The rules regarding relevancy ... are quite liberal .... Neither the appellate nor the district court is permitted to consider the weight or sufficiency of the evidence in determining relevancy, and even if a district court believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has even the slightest probative worth.

149 F.3d at 512. The *Robinson* Court also noted that, when a plaintiff "relie[s] heavily on circumstantial evidence to carry her burden of proof," as is always true, "each piece of evidence served to complete part of the puzzle of this case. The absence of even one piece of highly relevant evidence may have made the difference in the jurors' minds, and its exclusion was therefore far from harmless." *Id.* at 515.

To avoid invading the province of a jury, the "relevant inquiry" under Rule 401 rests on whether a "reasonable trier of fact" — a reasonable jury, not the trial judge — could find the evidence has "any tendency" to make a "fact of consequence" more or less probable than

without the evidence. *See e.g.*, *United States v. Cartwright*, 359 F.3d 281, 290 (3d Cir. 2004); *Walther v. Lone Star Gas Company*, 952 F.2d 119, 124 (5th Cir. 1992). And, MCCORMICK ON EVIDENCE states the rule clearly:

> The judge can only ask, Could a reasonable juror believe that the [evidence] makes [a disputed fact] more probable than it would otherwise be?

J. STRONG, MCCORMICK ON EVIDENCE, 279. The same rule arises from the body of federal case law collected in MUELLER & KIRKPATRICK, FEDERAL EVIDENCE, § 4:1 at 544 (3d ed. 2003):

> Determining relevancy involves 'weighing' the proof only in the limited sense of determining that a reasonable person acting as trier could assign some weight to the evidence in deciding the point it is offered to prove.

In this case, the evidence the City seeks to avoid is closely tied to the decision makers whose acts (and failure to act) resulted in the gender discrimination suffered by the plaintiff. It includes the discriminatory animus Dunlap exhibited towards Capt. Melissa Ownby, the City's knowledge of that animus and failure to take appropriate action thereon. It includes knowledge that over half of the female officers had experienced sexual harassment and/or other forms of gender bias and the City's failure to take appropriate action despite that knowledge. It includes instances of gender bias that rose to the level of physically-threatening behavior towards female officers, about which the Department did nothing. And it includes external manifestations of an anti-female bias in the CID offices, including sexist remarks by Dunlap.

**Rule 403, And Relevant Case Law, Requires a Fact-Intensive Context-Specific Inquiry, Under A Standard That Tilts Toward Admissibility**

As the Supreme Court noted in *Mendelsohn*, "Applying Rule 403 to determine if evidence is prejudicial also requires a fact-intensive, context-specific inquiry." 128 S.Ct. at 1147. The Supreme Court did not disturb in any way the longstanding law, holding that Rule 403 "is an extraordinary

remedy that should be used sparingly." *United States v. Roberts*, 88 F.3d 872, 880 (10th Cir. 1996). The key rule is the following:

> In performing the Rule 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.

*Deters v. Equifax Credit Info. Services, Inc.*, 202 F.3d 1262, 1274 (10th Cir. 2000); *see also Hendrix v. Raybestos-Manhatten, Inc.*, 776 F.2d 1492 (11th Cir. 1985). *Weinstein* also directly supports this view of the law. Because the fact-finding process is imperiled by the exclusion of relevant evidence under Rule 403, courts "must take special care to use it sparingly." 2 *Weinstein's Federal Evidence*, § 403.02[2][a] at 403-11. *See also Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 771 (7th Cir. 2006) ("Rule 403 'tilts in favor of admissibility.'") (Posner, J.)

Rule 403 embodies three distinct requirements: (1) Because any excluded evidence must be "substantially outweighed" by one of the 403 factors, exclusion under Rule 403 usually will be limited to evidence that has only marginal probative value; (2) Even where evidence has marginal value, the value of that evidence will only be "substantially outweighed" if the countervailing problem regarding one or more of the 403 factors is demonstrably clear and serious; (3) Evidence cannot be excluded under Rule 403 if the potential problems could be significantly reduced "by way of contemporaneous instruction to the jury followed by additional admonitions in the charge." 2 *Weinstein's Federal Evidence*, § 403.02[2][c] at 403-16.

This approach was the focus on the Supreme Court's decision in *Old Chief v. U.S.*, 519 U.S. 172 (1997), where it approved the trial court's exclusion of certain evidence, but with key observations on "the scope of a trial judge's discretion under Rule 403." *Id.* at 180. Boiled down, in performing a 403 balancing, a court must consider "the total context of the case." Most particularly

the court should consider the "need for evidentiary richness and narrative integrity" when looking to substitute possible alternative sources of less prejudicial evidence:

> As we will explain later on, the judge would have to make these calculations with an appreciation of the offering party's need for evidentiary richness and narrative integrity in presenting a case, and the mere fact that two pieces of evidence might go to the same point would not, of course, necessarily mean that only one of them might come in.

*Id*. at 182-83. There are no true alternatives to pertinent other-employee evidence. The district court in *Old Chief* had available to it alternative, relevant admissible evidence of prior conviction that satisfied all the prosecutor's needs when defendant offered to stipulate. Plaintiffs like Lewallen, however, have no "alternatives," and the need for "evidentiary richness" and "narrative integrity" can only be met by live testifying co-employees. After all, as the Supreme Court further observed in *Old Chief,* the "probative worth of any particular item of evidence is obviously affected by the scarcity or abundance of other evidence on the same point." *Id.* at 184-85.

**Evidence Cannot be Excluded Because it is Prejudicial, Only if it is Unfairly Prejudicial**

The Court's decision in *Mendelsohn* relied, in part, on its earlier decision in *U. S. v. Abel*, 469 U.S. 45 (1984), which strongly supports the plaintiff's arguments for the admissibility of this evidence under Rules 401 and 403. The question on appeal arose from the trial court's ruling to allow into evidence what was undoubtedly inflammatory testimony showing defendant's alibi witness was a member of the Aryan Brotherhood prison gang, whose tenets required them to lie and cheat. The defendant argued evidence of membership in the gang should have been excluded under Rule 403. Much like Sprint did in the *Mendelsohn* case, and the City does in this case, the criminal defendant argued "undue prejudice." Despite the highly inflammatory nature of the evidence proffered in *Abel* – and its far-greater potential for undue prejudice than the co-worker evidence offered in this case – the Supreme Court rejected the Rule 403 argument. Why? Because the district

court offered to give "a limiting instruction concerning the testimony," and had sustained defense objections to certain aspects of the testimony. For example, the prosecution could not state the name of the gang and no evidence was permitted as to the punishment meted out to unfaithful members of that group. The same protections are available in this case. Notably, the Supreme Court held in words perfectly appropriate for this situation:

> These precautions did not prevent all prejudice to respondent from Ehle's testimony, but they did, in our opinion, ensure that the admission of this highly probative evidence did not unduly prejudice respondent. We hold there was no abuse of discretion under Rule 403 in admitting Ehle's testimony as to membership and tenets.

469 U.S. at 54-55.

### Inclusion of Other Discrimination Evidence is Particularly Appropriate in Discrimination Cases And Provides "Facts of Consequence" on the Question of Pretext

The Supreme Court (many times) has held that determining the "sensitive and difficult" question of discrimination is the province of the "trier of fact." *U. S. Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 716 (1983) ("All courts have recognized that the question facing triers of fact in discrimination cases is both sensitive and difficult . . . There will seldom be eyewitness testimony as to the employer's mental processes."); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 149-150 (2000) ("Credibility determination, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge.").

On the ever-important question of proving pretext, the Supreme Court recognized over 35 years ago, that an employer's policies and practices in its treatment of others in the same protected group is significant. As the Court observed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

> Other evidence that may be relevant to any showing of pretext includes . . . [the employer's] general policy and practice with respect to minority employment.

*Id.* at 804-05.

## Conclusion

The plaintiff respectfully asks the Court to deny the City's motion in limine, in addition to its objections to her exhibits, and particularly as to evidence that will be presented by other witnesses about other instances of gender discrimination at the Beaumont Police Department.

Respectfully submitted,

BUTLER & HARRIS

  /s/ Margaret A. Harris
Margaret A. Harris
State Bar No. 09081400
1007 Heights Boulevard
Houston, Texas  77008
(713) 526-5677
(713) 526-5691 (fax)
Margie@butlerharris.com

*Attorney in charge for the plaintiff

Thomas A. Peterson
State Bar No. 15842900
595 Orleans, Suite 1111
Beaumont, Texas 77701
(409) 838-6144
(409) 838-4421 Facsimile

### Certificate of Service

I certify that a true and correct copy of this document has been served upon Joseph Sanders, who is a registered user of the Court's electronic filing system because this document is being filed today, October 22, 2008, by electronic filing with the U.S. District Court for the Eastern District of Texas.

/s/ Margaret A. Harris