

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| TINA LEWALLEN | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:05-CV-733-TH |
| | § | JURY |
| CITY OF BEAUMONT, | § | |
| | § | |
| *Defendant.* | § | |

# MEMORANDUM OPINION & ORDER
## AWARDING PLAINTIFF'S ATTORNEYS' FEES & COSTS

Before the Court is the *Plaintiff's Motion for Reasonable Attorneys' Fees and Costs, and Memorandum in Support* [Clerk's Docket No. 198]. Having considered the motion, the responsive submissions of the parties, the record and the applicable law, the Court now awards attorneys' fees totaling **$428,421.75**. The Court also awards **$15,873.11** in costs and litigation-related expenses.

## I. BACKGROUND

Plaintiff Tina Lewallen ("Plaintiff" or "Lewallen") is a police officer for the City of Beaumont, Texas ("Defendant" or "the City"). In November 2005, she filed this employment discrimination suit, alleging that the Beaumont Police Department twice refused to select her for a detective position because of her gender: once in November 2003, and again in December

2003. Plaintiff asserted that these acts violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Chapter 21 of the TEXAS LABOR CODE.

After three years of discovery disputes, contentious motion practice and multiple continuances, the case proceeded to trial in late 2008. The jury returned its verdict after a four-day trial, finding: (1) that the November 2003 decision to deny Plaintiff a detective position was gender discrimination that violated the Fourteenth Amendment and the TEXAS LABOR CODE; and (2) that the December 2003 decision was not. Plaintiff was awarded $75,000.00 in past and future compensatory damages.

Consequently, Plaintiff now moves for a statutory award of reasonable attorneys' fees and costs.

## II. APPLICABLE LAW

A. <u>Attorney's Fees for a Prevailing Party</u>

Plaintiff brought her equal protection claim under 42 U.S.C. § 1983 ("Section 1983"), a remedial statute that provides a cause of action for violations of substantive federal rights. *See Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 382 (1979). A district court has discretion to award any "prevailing party" in a Section 1983 action "a reasonable attorney's fee as part of the costs" under 42 U.S.C. § 1988(b) ("Section 1988"). *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

To qualify as a prevailing party, "the plaintiff must (1) obtain actual relief, such as an enforceable judgment or a consent decree; (2) that materially alters the legal relationship between the parties; and (3) modifies the defendant's behavior in a way that directly benefits the plaintiff at the time of the judgment or settlement." *Walker v. City of Mesquite*, 313 F.3d 246, 249 (5th Cir. 2002) (citing *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992)). "The touchstone of the prevailing party inquiry…is the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Sole v. Wyner*, 551 U.S. 74, 82 (2007) (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989)).

B.  Calculating Attorneys' Fees: the Lodestar

Once the court determines that a plaintiff is entitled to attorney's fees, it must calculate the appropriate amount to be awarded. *See Hopwood v. Texas,* 236 F.3d 256, 277 (5th Cir. 2000. In order to determine the amount, the trial court must calculate the "lodestar" by multiplying the number of hours reasonably spent on the case by a reasonably hourly rate. *Rutherford v. Harris County,* 197 F.3d 173, 192 (5th Cir. 1999); *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993) (citing *Hensley v. Eckerhart*, 462 U.S. 424, 434 (1983)).

The court's first step is to determine the compensable hours listed in the attorney's time records. *Shipes v. Trinity Indus.*, 987 F.2d 311, 319 (5th Cir. 1993) (citing *Alberti v. Klevenhagen*, 896 F.2d 927, 930 (5th Cir.), *vacated in part*, 903 F.2d 352 (5th Cir. 1990)). To facilitate this determination, the fee request submitted to the court should include "contemporaneously created time records that specify, for each attorney, the date, the hours

expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.,* 148 F.3d 149, 173 (2d Cir.

1998). Time charged for work that is "excessive, duplicative, or inadequately documented"

should be excluded. *Watkins*, 7 F.3d at 457 (citing *Hensley, 461 U.S. at 432-34*; *Von Clark v.

Butler*, 916 F.2d 255, 259 (5th Cir. 1990)). And, "in dealing with such surplusage, the court has

discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical

means of trimming fat from a fee application." *Hilton v. Exec. Self Storage Assocs.*, No. H-06-

2744, 2009 U.S. Dist. LEXIS 51417, at *32, 2009 WL 1750121 (S.D. Tex. June 18, 2009)

(quoting *Kirsch,* 148 F.3d at 173). The party seeking a fee award is charged with the burden of

showing the reasonableness of the hours billed. *Saizan v. Delta Concrete Prods. Co., Inc.,* 448

F.3d 795, 799 (5th Cir. 2006) (citing *Walker v. City of Mesquite,* 313 F.3d at 251). So, that party

must also show that billing judgment was exercised. *Id.* "Billing judgment requires

documentation of the hours charged and the hours written off as unproductive, excessive, or

redundant." *Id.* If evidence of billing judgment is not submitted, a fee award should be reduced

accordingly by a percentage intended to substitute for the exercise of billing judgment. *Id.*;

*Walker v. U.S. Dep't of Housing & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996).

     Once the compensable time is determined, the court's second step is to select "an

appropriate hourly rate based on prevailing community standards for attorneys of similar

experience in similar cases." *Shipes*, 987 F.2d at 319 (citing *Alberti*, 896 F.2d at 930); *Blum v.

Stenson*, 465 U.S. 886, 896 (1984). Again, the party seeking fees bears the burden of

establishing the market rate and should present the court with evidence showing the

reasonableness of the proposed rate. *Riley v. City of Jackson, Miss.,* 99 F.3d 757, 760 (5th Cir.

1996). The appropriate hourly rate is generally established through affidavits of other attorneys

practicing in the community. *Tollet v. City of Kemah*, 285 F.3d 357, 368-69 (5th Cir. 2002). In

addition, the trial court may use its own expertise and judgment to independently assess the value of an attorney's services. *Davis v. Bd. of Sch. Comm'rs of Mobile County*, 526 F.2d 865, 868 (5th Cir. 1976).

After determining the number of compensable hours and the appropriate hourly rate, the court multiplies one by the other to produce the "lodestar" amount. *Shipes*, 987 F.2d at 319.

C.  Modifying the Lodestar:  the Johnson Factors

There is a strong presumption that the calculated lodestar is the reasonable fee and should only be modified in exceptional cases. *Saizan*, 448 F.3d at 800 (citing *Heidtman v. County of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999)).  However, the lodestar may be adjusted upward or downward based on a consideration of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  *Id.* at 717-19; *Watkins*, 7 F.3d at 457.[1]

"The most critical factor in determining an attorney's fee award is the 'degree of success obtained.'"  *Saizan,* 448 F.3d at 799 (quoting *Singer v. City of Waco, Tex.,* 324 F.3d 813, 829 (5th Cir. 2003) (quoting *Hensley,* 461 U.S. at 436)).  To evaluate the degree of success, a court should not simply take "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." *Hensley*, 461 U.S. at 435 n.11.  It is not "necessarily significant

---

[1] The twelve *Johnson* factors are:  (1) the time and labor required to represent the client; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client of the circumstances; (8) the amount involved ant the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

that a prevailing plaintiff did not receive all the relief requested." *Black Heritage Society v. City of Houston*, No. H-07-0052, 2008 U.S. Dist. LEXIS 53598, at *19-20, 2008 WL 2769790 (S.D. Tex. July 11, 2008) (citation omitted). So, such a mathematical ratio provides little aide in determining what is a reasonable fee in light of all the relevant factors. *Hensley*, 46 U.S. at 435 n.11. "When the plaintiff's claims involve a common core of facts or [are] based on related legal theories, the lawsuit cannot be viewed as a series of discrete claims, and the court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Black Heritage Society*, 2008 U.S. Dist. LEXIS 53598, at *19 (quoting *Hensley*, 461 U.S. at 435) (internal quotations omitted). Furthermore, with respect to damages, "the fee award need not be precisely proportionate to the result obtained." *Hilton*, 2009 U.S. Dist. LEXIS 51417, at *28 (citing *Saizan*, 448 F.3d at 802-03 & n.42). "While a low damages award is one factor which the court may consider in setting the amount of fees, this factor alone should not lead the court to reduce a fee award." *Saizan*, 448 F.3d at 799 (quoting *Singer*, 324 F.3d at 830 (quoting *Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 392 (5th Cir. 2000))).

Finally, the lodestar may not be adjusted because of a *Johnson* factor if that factor was already subsumed in the lodestar. *Migis v. Pearle Vision*, 135 F.3d 1041, 1047 (5th Cir. 1998) (citing *Von Clark*, 916 F.2d at 258). Taking account of the factor again would amount to double counting. *Id.*; *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (citing *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 726-27 (1987)).

With these standards in mind, the Court now considers Plaintiff's request for attorneys' fees and costs.

# III. DISCUSSION

A. <u>Plaintiff is a Prevailing Party</u>

Defendant does not dispute that Plaintiff is the prevailing party, as the term is used in Section 1988. The jury found that Defendant's November 2003 decision to deny Plaintiff a detective position was impermissible gender discrimination, and awarded Plaintiff $75,000.00 in damages. Plaintiff is obviously the prevailing party and is entitled to a fee award.

However, Defendant does object that the amount of the attorneys' fee award requested by Plaintiff is excessive because the claimed hourly rate and the number of hours billed are unreasonable. Further, Defendant argues for a downward adjustment of the lodestar, based on one of the *Johnson* factors: the degree of success.

[THIS SPACE INTENTIONALLY BLANK]

[DISCUSSION CONTINUES ON FOLLOWING PAGE]

B.  Number of Hours Reasonably Expended

Plaintiff summarizes the time and fees claimed as follows:

| Timekeeper | Hours | Rate | Amount |
|---|---|---|---|
| Margaret Harris | 859.85 | $350.00 | $300,947.50 |
| Katherine Butler | 25.05 | $350.00 | $8,767.50 |
| Paul Harris[2] | 190.60 | $125.00 | $23,825.00 |
| Janice Barlow | 649.65 | $95.00 | $61,716.75 |
| Paul Harris[3] | 92.75 | $65.00 | $6,028.75 |
| Taneka Johnson | 31.25 | $65.00 | $2,031.25 |
| Thomas Peterson | 226.90 | $250.00 | $56,725.00 |
| Robert McKnight | 59.85 | $275.00 | $16,458.75 |
| **Total** | **2,135.90** | | **$476,500.50** |

Plaintiff's attorneys have submitted evidence to show that they exercised billing judgment in preparing this fee application by reducing or deleting a number of charges.  In total, Plaintiff declares billing reductions of 138 attorney hours and 49.35 paralegal hours.  Plaintiff also professes to striking 4.6 hours of clerical work from the fee application.

---

[2] This entry lists work performed by Paul Harris as an associate lawyer after he passed the Texas bar exam.
[3] This entry lists work performed by Paul Harris as a law clerk prior to passing the bar.

(1)  Billing for Pre-Contractual Work

Plaintiff's fee petition includes entries for work dating back to November 20, 2003. Defendant, however, argues that Plaintiff should not recover fees for any work performed prior to July 2005, when Plaintiff's counsel entered into a formal representation agreement with Lewallen.  Defendant has not submitted a single legal authority in support of this argument. And, every case this Court has located tacks in the opposite direction.  *See, e.g. League of Women Voters of Fla. v. Browning*, No. 06-21265-CIV, 2008 U.S. Dist. LEXIS 108147, at *29-30, 2008 WL 5733166 (S.D. Fla. Dec. 4, 2008) (finding that plaintiffs were entitled to recover for work performed prior to entering into a representation agreement); *First Vagabonds Church of God v. City of Orlando*, No. 6:06-cv-1583-Orl-31KRS, 2008 U.S. Dist. LEXIS 94039, at *8 n.5, 2008 WL 4877159 (M.D. Fla. Nov. 12, 2008) ("[A] party may be compensated for work performed prior to the formal memorialization of a representation agreement."); *see Vought v. Teamsters Gen. Union Local No. 662*, No. 05-C-552, 2008 U.S. Dist. LEXIS 67090, at *10-11, 2008 WL 3981989 (E.D. Wis. Aug. 22, 2008) (awarding fees for work performed prior to formalizing representation agreement); *Reyes v. Falling Star Enters.*, No. 6:04-cv-1648-Orl-KRS, 2006 U.S. Dist. LEXIS 74617, at *19-20, 2006 WL 2927553 (M.D. Fla. Oct. 12, 2006) (stating that fees may be awarded for preparation of a representation agreement and consultations with client prior to execution of the agreement); *see also George v. GTE Directories Corp.*, 114 F. Supp. 2d 1281, 1293-94 (M.D. Fla. 2000) (awarding unchallenged fees for work done prior to signing representation agreement); *Golden Gate Audobon Soc., Inc. v. United States Army Corps of Engineers*, 732 F. Supp. 1014, 1018-19 (N.D. Cal. 1989) (awarding fees accrued prior to execution of representation agreement because attorney had an ongoing relationship with plaintiffs).  The Court agrees that a party may be compensated for work performed prior to the

execution of a representation agreement, so long as the time spent is reasonable, and the work is reasonably related to the claims Plaintiff pursues in the lawsuit. The Court will not strike work billed prior to July 2005 simply because a formal client agreement had not been memorialized.

(2)  Minimum Billing in Quarter-Hour Increments

Defendant also faults Plaintiff for submitting billing records that (in many instances) show the Butler & Harris law firm billed time in quarter-hour increments—rather than in tenths of an hour. There is not a federal or local rule that requires any particular billing increments to be used when seeking an attorney's fee award. Yet, the general rule that time charged must be reasonable still applies to all work claimed in the fee petition. *See Hensley*, 461 U.S. at 433-34 (the fee applicant bears the burden of supporting the reasonableness of all time expenditures for which compensation is sought).

The Court has carefully reviewed the entries challenged by Defendant. While there are a number of ".25" hour charges, on the whole, those charges do not appear to be excessive. Further, it does not appear that quarter-hour increments were used automatically. There are thirty-two charges in the fee application for less than a quarter of an hour of work. Defendant scoffs that the inclusion of these charges "is simply for the Court's benefit and is not the methodology [Butler & Harris] are using to bill." (Def.'s Resp. to Pl.'s Mot. for Atty's' Fees at 12). But, this argument is not exactly accurate. During the course of the litigation, Butler & Harris converted its billing system from quarter-hour to tenth-of-an-hour increments. At a minimum, 250 entries Butler & Harris's fee petition were not billed in quarter-hour increments. For these reasons, the Court will not reduce the challenged quarter-hour charges. *See Cavaretta*

*v. Entergy Corp. Cos. Benefits Plus Long Term Disability Plan*, No. Civ.A. 03-1830, 2005 U.S. Dist. LEXIS 8028, at *10, 2005 WL 1038532 (E.D. La. April 29, 2005) (finding that on the balance, the quarter-hour entries objected to by defendant were reasonable); *Causeway Medical Suite v. Foster*, No. Civ.A. 99-509, 2000 U.S. Dist. LEXIS 6472, at *8-9, 2000 WL 533515 (E.D. La. May 2, 2000).

### (3) Work Performed by Paralegals & Law Clerks

Plaintiff has submitted a total of 767.05 hours billed for work performed by paralegals and law clerks. The United States Supreme Court has stated that it is a "self-evident proposition that the 'reasonable attorney's fee' provided for by [42 U.S.C. § 1988] should compensate the work of paralegals, as well as that of attorneys." *Missouri v. Jenkins,* 491 U.S. 274, 285 (1989).[4] But, whether law clerk and paralegal fees are compensated at the rate those individuals are paid by the law firm, or at a higher hourly market rate, depends on the billing practice of the relevant market. *Newby v. Enron Corp. (In re Enron Corp. Sec. Litig.),* 586 F. Supp. 732, 785 (S.D. Tex. 2008) (citing *Sandoval v. Apfel*, 86 F. Supp. 601, 610 (N.D. Tex. 2000)). Still, the Supreme Court has acknowledged that "separate billing appears to be the practice in most communities today." *Missouri*, 491 U.S. at 289. And, this Court is aware that the prevailing practice in the Eastern District of Texas is to charge clients for paralegal and law clerk work on a separate hourly basis. Paralegal and law clerk fees are therefore recoverable here at the relevant market rates.

---

[4] Defendant originally challenged the submission of paralegal and law clerk time by arguing that, categorically, such work cannot be recovered under Section 1988, citing *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291 (2006). Wisely, Defendant later abandoned this argument in its sur-reply brief, acknowledging that "Plaintiff is correct, to the extent recoverable, Plaintiff may recover fees for law clerks and paralegals." (Def.'s Sur-Reply to Pl.'s Mot. for Atty's' Fees at 2). Presumably, Defendant came to the same conclusion reached by this Court: *Murphy* did not overturn *Missouri v. Jenkins*, 491 U.S. 274 (1989). Paralegal and law clerk fees are separately compensable under Section 1988. *Missouri*, 491 U.S. at 285-86.

(4) Clerical Work

Nevertheless, Defendant argues that the hours submitted by Plaintiff for law clerk and paralegal work include many activities that are essentially clerical in nature—and should be reduced accordingly. "Purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Missouri*, 491 U.S. at 288 n.10. Instead, paralegal fees can be recovered "only to the extent that the paralegal performs work traditionally done by an attorney." *Allen v. U.S. Steel Corp.,* 665 F.2d 689, 697 (5th Cir. 1982); *Prime Ins. Syndicate, Inc. v. Jefferson,* 547 F. Supp. 2d 568, 575 (E.D. La. 2008) (citing *Jones v. Armstrong Cork Co.*, 630 F.2d 324, 325 n.1 (5th Cir. 1980)). Such legal services include "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations and drafting correspondence." *Missouri*, 491 U.S. at 288 n.10.

Likewise, clerical work performed by attorneys is not recoverable at an attorney's rate. *See Johnson,* 488 F.2d at 717 (distinguishing pure legal work and investigation from "clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers," and stating that the dollar value of non-legal work "is not enhanced just because a lawyer does it."). Here, Defendant argues that numerous billing entries submitted by Plaintiff's counsel show attorneys performing clerical tasks.

Generally, Defendant's "clerical" objections challenge time charged for the following two categories of work: (1) basic communications and (2) case organization. As for communications, Defendant objects to telephone conferences and e-mail correspondence with

the client or with opposing counsel regarding scheduling issues and procedural matters. A representative example of such work is an entry from October 16, 2007, when paralegal Janice Barlow billed a 1.30 hours to "[s]chedule focus group with hotel; notify [Thomas Peterson] and Det. Lewallen of date." (Pl.'s Mot. for Atty's' Fees Ex. 2 at 32). With respect to organization, Defendant argues that time spent organizing the case file and entering data into a case-management computer program called "Case Map" is not billable legal work. A representative entry of this type occurred on March 24, 2008, when Paul Harris billed 1.20 hours for "[o]rganiz[ing] specific kinds of documents we received about individual officers/specialists/applicants; putting documents into 3-ring binders in alphabetical order by specialist's/applicant's last name." (*Id.* at 46). In addition, many representative Case Map entries refer simply to "[w]ork on indexing documents." (*Id.* at 37). The Court agrees with Defendant that such tasks are "largely clerical or housekeeping matters and not legal work." *Speaks v. Kruse*, No. 04-1952, 2006 U.S. Dist. LEXIS 84595, at *19-20, 2006 WL 3388480 (E.D. La. Nov. 20, 2006). Fees will not be awarded for such work.

At the same time, Defendant has also challenged tasks that the Court recognizes as substantive legal work; for example, an August 18, 2008 entry for "[t]rial preparation; work on motion in limine, exhibit list and jury instructions; confer with [Plaintiff counsel's staff]." (Pl.'s Mot. for Atty's' Fees Ex. 2 at 52). Similarly, Defendant challenges substantive entries related to the Case Map program such as: "[r]eview and analysis of position selection documents for incorporation into the Case Map software program." (*Id.* at 25). The Court finds that such work is legal in nature and may be billed accordingly.

Therefore, having carefully reviewed the challenged entries in the fee application, and Defendant's clerical objections, the Court determines that the following hours will be subtracted from the total submitted by Plaintiff: 245.10 hours billed by paralegal Janice Barlow, 18.5 hours billed by law clerk Taneka Johnson, 3.75 hours billed by Paul Harris as a law clerk, 17.75 hours billed by Paul Harris as an associate attorney, 1.80 hours billed by attorney Margaret Harris, and .50 hours billed by attorney Thomas Peterson.

(5) Inadequately Documented Time

Next, Defendant objects that certain entries in Plaintiff's fee application lack enough detail to show that they are attributable to Lewallen's claims. The first basis for this objection relates to the early stages of the case, at which time Plaintiff's counsel investigated claims of three other Beaumont police officers in addition to Lewallen's. These other claims were ultimately not pursued. However, Defendant maintains that Plaintiff charged for work on these other claims—or, more accurately, that Plaintiff's bills lack sufficient detail to show that they are solely for Lewallen's claims.

Margaret Harris, counsel for Plaintiff, has submitted a declaration stating: "I have deleted from my itemization all time and expenses attributed to my representation of those three individuals—except as to the limited amount of time I spent speaking with any one of them about matters that were directly relevant to the case we presented in court." (Pl.'s Mot. for Atty's' Fees Ex.1 at 8, ¶ 24). Upon reviewing the fee application, it is apparent that the billing records reflect such deletions. For example, there is a November 8, 2004 entry showing that law clerk Taneka Johnson "[r]eviewed evidence and put together [a] time line of events for [one of

the other potential plaintiffs]" (Pl.'s Mot. for Atty's' Fees Ex. 2 at 9-10) (alterations are the Court's). The four hours originally attributed to this work have been entirely deleted. (*Id.*). As such, the Court finds that Plaintiff has sufficiently established that work included in the fee application is attributable to Lewallen's claims.

Defendant further protests that certain other time entries simply lack enough detail to determine whether the work performed was related to the case. For example, persons' names have been redacted from a number of entries, resulting in enigmatic descriptions such as: "meeting to interview [name redacted]." (Pl.'s Mot. for Atty's' Fees, Ex. 2 at 6) (alterations in original). The Court finds that such entries are insufficient to show that the work performed was related to the case and that the time billed for such work was reasonable. Because it is Plaintiff's burden to make such showings, the bills will be reduced accordingly. 6.75 hours billed by Margaret Harris will be subtracted from the total.

(6) Billing for Unsuccessful Work or Issues Not Presented to the Court

Defendant asserts that Plaintiff's fee application should be reduced to account for work on unsuccessful motions. However, "a party may recover for time spent on unsuccessful motions so long as it succeeds in the overall claim." *Edwards v. Aaron Rents, Inc.*, 482 F. Supp. 2d 803, 812 (W.D. Tex. 2005) (quoting *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 434 (5th Cir. 2003); *Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-CV-0913-D, 2005 U.S. Dist. LEXIS 34557, at *34, 2005 WL 1867292 (N.D. Tex. Aug. 5, 2005) (citing *Hensley*, 461 U.S. at 434-35; *Von Clark v. Butler*, 916 F.2d 255, 259 (5th Cir. 1990)), *aff'd*, 2007 U.S. App. LEXIS 24778 (5th Cir. Oct. 23, 2007), *cert. denied*, 128 S.Ct. 255.

Defendant further contends that Plaintiff should be denied payment for work on legal issues that were not presented to the Court. For example, Plaintiff's counsel claims time for work on a request under the Texas Open Records Act; yet no such request was ever presented to the Court. However, the relevant question is not whether the issue was presented to the Court, but whether the time spent on the issue was reasonable in light of the overall claims being pursued. *See Hensley*, 461 U.S. at 433-34. The Court agrees with Plaintiff that work on the Texas Open Records request "was a reasonable method of gathering evidence for use in the case." (Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. for Atty's' Fees at 4).

(7) Excessive or Unnecessary Work

Defendant next attacks the fee application by arguing that Plaintiff has charged for work that was excessive or unnecessary.

First, Defendant claims that Plaintiff demanded an excessive number of documents through discovery; then spent an inordinate amount of time reviewing them. The Court is aware of the course of discovery during this case and, with this in mind, has carefully reviewed Plaintiff's fee petition. Given Plaintiff's allegations and the particular circumstances of this case, the Court finds that Plaintiff's discovery requests (and subsequent review efforts) were not excessive.

Second, Defendant argues that Plaintiff's counsel spent an excessive amount of time in contact with Lewallen, "strategizing and explaining the case." (Def.'s Resp. to Pl.'s Mot. for Atty's' Fees at 6). However, a review of the fee petition shows that Plaintiff submitted only

fifteen time entries for such work—amounting to 8.30 hours over the course of four years of litigation.[5]  The Court finds that this level of client contact was not excessive.

Finally, Defendant contends that Plaintiff's counsel spent an excessive amount of time preparing the fee petition and bill of costs.  "It is settled that a prevailing plaintiff is entitled to attorney's fees for the effort entailed in litigating a fee claim and securing compensation."  *Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir. 1985); *Prater v. Commerce Equities Mgmt Co., Inc.,* No. H-07-2349, 2008 U.S. Dist. LEXIS 98795, at *20-21, 2008 WL 5140045 (S.D. Tex. Dec. 8, 2008).  Defendant's acknowledge this point, but contend that the 81.55 hours submitted by Plaintiff's counsel for preparing the fee petition is excessive.[6]  The Court agrees.

"Fee applications do not typically involve novel or complex legal issues and the fees claimed for preparing them will be reduced if excessive."  *Prater*, 2008 U.S. Dist. LEXIS 98795, at *20.  While Plaintiff's motion for fees covers work performed over several years, it does not address any complex or unusual legal problems.  Further, Plaintiff hired attorney Robert McKnight solely to assist with preparation of the fee petition because of McKnight's experience with such matters.  While some courts have questioned whether it is appropriate to hire counsel to prosecute a Section 1988 fee award, the Court will allow some recovery of fees for McKnight's work.  *See Major v. Treen*, 700 F. Supp. 1422, 1451 (E.D. La. 1988) (citing *Jonas v. Stacks*, 758 F.2d 567 (11th Cir. 1985)).  Still, given the straightforwardness of the issues and the experience of the attorneys, the 81.55 hours claimed by Plaintiff are excessive.  The Court finds that the bill for such work should be reduced to 20 hours.  *See Prater*, 2008 U.S. Dist. LEXIS

---

[5] Plaintiff's counsel spent approximately a year investigating Lewallen's claims before filing the complaint, followed by three years of litigation.
[6] Defendant states that Plaintiff has claimed 83.80 hours for preparing the fee petition.  Defendant's figure appears to include 2.25 hours Robert McKnight charged for travelling from Victoria to Houston—hence the discrepancy with the Court's figure, which omits travel time.

98795, at *20 (finding that 46 hours to prepare fee application in a Fair Labor Standards Act case was excessive, given counsel's experience and the routine nature of the task); *West v. Aetna Life Ins. Co.,* 188 F. Supp. 2d 1096, 1102 (N.D. Iowa 2002) (finding that 41 hours to prepare a fee motion in an ERISA case was excessive because it is a "routine, largely clerical task"); *Carlson v. United Academics-AAUP/AFT/APEA/AFT-CIO,* No. A98-0141-CV-JKS, 2002 U.S. Dist. LEXIS 11217, 2002 WL 487179, at *4 (D. Alaska Mar. 12, 2002) ("In this day and age of computerized records, accounting programs, and computer databases storing briefing records, much of the preparation of a fee application should usually be delegated to a secretary or paralegal. The attorney need only allot such time as is necessary and prudent to review billing records, statements, and affidavits for accuracy."). The Court will reduce the time claimed by the following amounts: 30.80 hours from Robert McKnight, 21.45 hours from Margaret Harris, 3.90 hours from Janice Barlow, 3.30 hours from Paul Harris at his attorney rate, and 2.10 hours from Thomas Peterson.

(8) Overstaffed and Duplicative Billing

Defendant next contends that Plaintiff overstaffed the case. This is the basis for Defendant's challenge to almost all of attorney Thomas Peterson's time: the contention that his work on the case was unnecessary because the Butler & Harris firm could have handled it alone. The Court, however, disagrees with this contention. First, the Court finds that using two lawyers to try the case was not excessive. Plaintiff's claims required presentation of detailed evidence covering a number of years, describing Defendant's complex organizational structure and culture. *See Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, 63 F.3d 516, 525-26 (7th Cir. 1995) (it was not unreasonable for more than one attorney to work on a lawsuit that spanned over

four years and entailed substantial discovery).  Further, Mr. Peterson had a substantive role at trial.  He conducted voir dire, took four witnesses on direct examination and three witnesses on cross examination, and gave part of the closing argument.  So, as a threshold matter the Court finds that involving Mr. Peterson is the case was not overstaffing per se.

Still, that finding does not mean that all of Mr. Peterson's time was reasonably spent.  Defendant also complains that much of Mr. Peterson's work was duplicative.

First, many of Peterson's charges are for communications with his co-counsel.  For example, thirty-two of Peterson's billing entries are attributable to telephone calls with Ms. Harris.  Still, "consultation and 'sound-boarding' among attorneys is valuable to effective litigation." *Feinberg v. Hibernia Corp.*, 966 F. Supp. 442, 448 (E.D. La. 1997).  And, thirty-two (mostly brief) phone conferences over the course of four years of litigation is not excessive.

The same may be said of the entries that reflect time Peterson charged for reading and reviewing documents.  While there are many such entries, the majority are for no more than a tenth of an hour.  There is significant value in keeping local counsel up to speed on the progress of a case, so that he may adequately represent his client.  It is impossible to predict the course of litigation; and counsel must remain prepared.  Furthermore, if Peterson had not contemporaneously reviewed court documents, it would have been necessary for him to hurriedly review them before trial.  Such a course of action would result in weaker representation for his client—but would likely result in just as many net billable hours.  For these reasons, the Court finds that Peterson's work on the case was not duplicative.

Defendant also asserts that Janice Barlow's attendance at trial represents duplicative work. Given the detailed nature of the evidence presented at trial, and the critical role Ms. Barlow had in compiling and organizing that evidence, the Court finds that her attendance at trial was reasonable. *See Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, 63 F.3d 516, 526 (7th Cir. 1995) (finding that trial court's determination that sending two attorneys and a legal assistant to handle a complex trial was "perfectly reasonable").

(9) Billing for Travel Time

Plaintiff seeks payment for 50% of the time spent travelling between Houston and Beaumont. In the fee-shifting context, compensating travel time at 50% of actual time is a common practice within the Fifth Circuit. *See In re Babcock*, 526 F.3d 824, 827-28 (5th Cir. 2008) (discussing various cases in which travel time was charged at one-half rates); *Watkins v. Fordice*, 7 F.3d 453, 459 (5th Cir. 1993); *Bd. of Supervisors of La. State Univ. v. Smack Apparel*, No. 04-1593, 2009 WL 927996, at *6 (E.D. La. April 2, 2009) ("[T]ravel time…in the Fifth Circuit is usually compensated at 50% of actual time."). Plaintiff claims the following time: 26.45 hours billed by Margaret Harris, 10.50 hours charged by Thomas Peterson, 8.70 hours from Janice Barlow, and 2.25 hours from Robert McKnight.

In opposition to these charges, Defendant argues that Plaintiff should not be paid at all for travel time because travel was unnecessary. Defendant maintains that the need to travel only arose because Plaintiff chose to use out-of-town counsel, even though local counsel was available in the form of Thomas Peterson and other competent Beaumont attorneys. Defendant reasons that it should not have to underwrite Plaintiff's unilateral decision to use out-of-town

counsel. In support of this position, Defendant cites *Hahnemann University Hospital v. All Shore, Inc.,* 514 F.3d 300, 311-12 (3d Cir. 2008); a case awarding fees under 29 U.S.C. § 1132(g)(1) of ERISA, which stated that "under normal circumstances, a party that hires counsel from outside the forum of the litigation may not be compensated for travel time," unless competent local counsel is unavailable. *Id.* at 311-12 (quoting *Interfaith Cmty Org. v. Honeywell Int'l, Inc.,* 426 F.3d 694 (3d Cir. 2005)). However, the Fifth Circuit Court of Appeals has never announced such a rule, and *Hahnemann* is not controlling.

Furthermore, it appears that courts in the Fifth Circuit regularly award travel time to out-of-town counsel without requiring them to show that local counsel was unavailable. *See, e.g., Smack Apparel*, 2009 WL 927996, at *6 (awarding travel time to Atlanta attorneys despite the fact that New Orleans counsel was available); *McClain v. Lufkin Indus., Inc.*, No. 9:97-CV-063, 2009 U.S. Dist. LEXIS 27983, at *15-16, 2009 WL 921436 (E.D. Tex. April 2, 2009) (awarding travel time to California attorneys despite the fact that attorneys in the Eastern District of Texas were available) (Clark, J.).

Here, the total travel time sought by Plaintiff is miniscule in comparison to the amount of time and work done in the case. Further, Plaintiff has shown that counsel only travelled between Beaumont and Houston when their task could not be accomplished with a phone call or e-mail. As such, the Court finds that the time requested by Plaintiff is reasonable.

For these reasons, Plaintiff's travel time will be awarded at one-half actual time.

C.  <u>Appropriate Hourly Rate</u>

Having set the number of compensable hours, the Court's next step in calculating the lodestar is to decide the hourly rate to be charged for those hours.  *See Shipes v. Trinity Indus.*, 987 F.2d 311, 319 (5th Cir. 1993) (citing *Alberti v. Klevenhagen*, 896 F.2d 927, 930 (5th Cir.), *vacated in part*, 903 F.2d 352 (5th Cir. 1990)).

As stated above, the party seeking fees bears the burden of establishing that the hourly rate claimed is reasonable.  *Riley v. City of Jackson, Miss.,* 99 F.3d 757, 760 (5th Cir. 1996).  The measure of the reasonable rate is the market rate for similar services by similarly trained and experienced lawyers in the relevant legal community.  *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).  That market rate is generally established through affidavits from other attorneys practicing in the relevant community.  *Id.*  And, the relevant legal community is the one "in which the district court sits."  *Id.* (quoting *Scham v. District Courts Trying Criminal Cases*, 148 F.3d 554, 558 (5th Cir. 1998); *see In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 226, 232 (2d Cir. 1987) (stating that courts should evaluate the rates used in the district in which the reviewing court sits); *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983) (explaining that the "community" for purposes of this calculation is the judicial district where the trial court sits).  To summarize: Plaintiff must produce evidence showing that the hourly rates claimed in the fee application are in line with those charged in the Eastern District of Texas for similar services by lawyers of similar skill, experience and reputation.  *See Deltatech Const., LLC v. Sherwin-Williams Co.,* No. Civ.A. 04-2890, 2005 U.S. Dist. LEXIS 36517, 2005 WL 3542906, at *3 (E.D. La. Nov. 3, 2005) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).

At the outset, the Court acknowledges that "Defendant does not object to the hourly rate of Paul R. Harris, Janice Barlow or Taneka Johnson." (Def.'s Resp. to Pl.'s Mot. for Atty's' Fees at 11). Likewise, Defendant does not question Thomas Peterson's hourly rate. "Because the rates are not contested, they are considered *prima facie* reasonable." *Black Heritage Society v. City of Houston*, 2008 U.S. Dist. LEXIS 53598, at *22 (S.D. Tex. July 11, 2008) (citing *Islamic Center of Miss., Inc. v. City of Starkville, Miss.*, 876 F.2d 465, 469 (5th Cir. 1989). Therefore, the hourly rates for the work performed by these individuals are set as follows: $250.00 for Thomas Peterson; $125.00 for Paul Harris's work as an attorney, and $65.00 his work as a law clerk; $95.00 for Janice Barlow; and $65.00 for Taneka Johnson.

Plaintiff's attorneys Margaret Harris and Katherine Butler practice with the law firm of Butler & Harris in Houston, Texas. They seek an hourly rate of $350.00. To prove that $350.00 is the prevailing rate in the Eastern District of Texas, they offer the affidavits of two attorneys who regularly engage in complex litigation here: Andy Tindel of Tyler and Timothy Garrigan of Nacogdoches. This court is familiar with these attorneys, their skill and experience, and the nature of their work. Both avow that $350.00 per hour is consistent with the rates charged for similar work in the Eastern District of Texas. In fact, Mr. Garrigan describes the fee as "very reasonable, even modest." (Pl.'s Mot. for Atty's' Fees Ex. 7 at 3).

Garrigan's affidavit was prepared shortly before he was awarded $400.00/hr in another local employment discrimination case: *McClain v. Lufkin Indus., Inc.*, No. 9:97-CV-063, 2009 U.S. Dist. LEXIS 27983, 2009 WL 921436 (E.D. Tex. April 2, 2009). In *McClain*, the Honorable Ron Clark (able colleague of the undersigned judge), concluded that it was reasonable for experienced attorneys to charge this rate in complex litigation in the Eastern District of

Texas. *McClain*, 2009 U.S. Dist. LEXIS, at *17-19.  In reaching this conclusion, Judge Clark first explained that, under certain circumstances, employment discrimination cases can qualify as complex litigation.  *Id.* at *17-18. (citing Manual for Complex Litigation § 32.1 (4th ed. 2004) ("complexity can be introduced into employment discrimination suits by class action allegations, questions regarding the scope of discovery, the technical nature of expert testimony, and issues relating to the granting of relief")).  He then found that *McClain* was a complex case because of the nature of the allegations, the asserted legal theories, and the fact that the case had been certified as a class action.  *Id.* at *18.  Finally, Judge Clark concluded that $400.00 was a reasonable rate in complex litigation in this district.

Plaintiff argues that the instant case should likewise be considered complex.  The Court agrees with the characterization. This litigation spanned several years.  It entailed substantial discovery and many contested motions raising complicated legal issues.  Lewallen's case represented a historic challenge to the promotion practices of the Beaumont Police Department. And, against great odds, she prevailed because her attorneys gathered proof of those practices over a number of years, sifted through thousands of documents, deposed numerous witnesses, marshaled their evidence and then presenting her claims in a clear and compelling fashion.  This work was certainly complex and required the skill and understanding of experienced employment law attorneys like Ms. Harris and Ms. Butler.

Still, this case involved the claims of one individual; whereas *McClain* was certified as a class action.  This distinction makes a difference.  The Court has experienced the unique difficulties presented by class actions and finds that this difference makes the case *sub judice* less

complex than *McClain*. As such, Harris and Butler's hourly rate should be less than the $400.00 applied to Timothy Garrigan in *McClain*.

At the same time, Harris and Butler should receive a rate greater than Thomas Peterson's $250.00/hr. Defendant has not disputed that $250.00 is an appropriate rate for an attorney of Peterson's skill and experience. And, while Peterson does have an employment law background, it is clear that Harris and Butler's experience and qualifications in this area are substantially greater. Further, the Butler & Harris firm took the lead in this case; with Peterson acting as local counsel. Therefore, an hourly rate higher than Peterson's $250.00 is appropriate.

Finally, Harris and Butler profess that $350.00 is at or below the customary rate they bill their clients. The touchstone of the rate analysis is the prevailing market rate, not the attorney's particular hourly standard. *See Hopwood v. Texas*, 236 F.3d 256, 281 (5th Cir. 2000) ("Hourly rates are to be computed according to the prevailing market rates in the relevant legal market, not the rates that 'lions at the bar may command.'") (quoting *Leroy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990)). However, "when the attorney's customary hourly rate is within the range of hourly fees in the prevailing market, that rate should be considered in setting a reasonably hourly rate." *League of United Latin Am. Citizens #442 v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1234 (5th Cir. 1997) (citing *Islamic Ctr. of Miss., Inc. v. City of Starkville, Miss.*, 876 F.2d 465, 469 (5th Cir. 1989)). In fact, "if the attorney's normal billing rate is within the range of market rates for attorneys with similar skill and experience, and the trial court chooses a different rate, the court must articulate its reasons for doing so." *Watkins v. Fordice*, 7 F.3d 453, 459 (5th Cir. 1993) (citing *Islamic Ctr.*, 876 F.2d at 469)). As discussed above, Plaintiff has established that, in this district, reasonable fees for litigation of this kind range from $250.00/hr

to $400.00/hr. Harris and Butler's customary rate of $350.00/hr is within the established range. The Court sees no compelling reason to deviate from that figure.

After careful consideration of the relevant facts and legal standards, the Court finds that $350.00 is an appropriate hourly rate for the work performed in this case by Ms. Harris and Ms. Butler.

As discussed above, Plaintiff also retained Robert McKnight to help prepare the fee application. Mr. McKnight, whose practice is based in Victoria, Texas, claims an hourly rate of $275.00. In support of this rate, he submits the declaration of John W. Griffin, Jr., who states that "Mr. McKnight's work in the fee-shifting aspect of labor and employment litigation is easily worth $275/hour in the Victoria legal market, which is smaller than that of Beaumont." (Pl.'s Mot. for Atty's' Fees Ex. 8 at 3). However, for purposes of a fee award, the relevant legal community is the forum of the litigation, not the forum where the attorneys reside. *Garmong v. Montgomery County,* 668 F. Supp. 1000, 1007 (S.D. Tex. 1987) (citing cases from numerous circuits to show that it is a "universally accepted rule that the rate to be applied in attorney fees litigation is that of the forum district"). And, the Court does not find this comparison to Victoria to be probative of rates in the Eastern District of Texas. As such, Plaintiff has not submitted satisfactory evidence of the rates that similarly situated attorneys in this community charge for preparation of a fee petition. There is no reason to think that an attorney brought into the case at the last minute to perform a single task deserves a higher rate than that applied to Thomas Peterson, who acted as local counsel for more than three years. What's more, Peterson has practiced law twenty years longer than McKnight. A $250.00/hr rate will be applied to

McKnight's work—a rate that the Court considers to be quite reasonable under the circumstances.

D.  Lodestar Calculation

Having determined the number of compensable hours and the appropriate hourly rates, the Court now calculates the Lodestar as follows:

| Timekeeper | Hours | Rate | Amount |
|---|---|---|---|
| Margaret Harris | 829.85 | $350.00 | $290,447.50 |
| Katherine Butler | 25.05 | $350.00 | $8,767.50 |
| Paul Harris[7] | 169.55 | $125.00 | $21,193.75 |
| Janice Barlow | 400.65 | $95.00 | $38,061.75 |
| Paul Harris[8] | 89.00 | $65.00 | $5,785.00 |
| Taneka Johnson | 12.75 | $65.00 | $828.75 |
| Thomas Peterson | 224.30 | $250.00 | $56,075.00 |
| Robert McKnight | 29.05 | $250.00 | $7,262.50 |
| **Total** | **1780.20** | | **$428,421.75** |

---

[7] This entry lists work performed by Paul Harris as an associate lawyer after he passed the Texas bar exam.
[8] This entry lists work performed by Paul Harris as a law clerk prior to passing the bar.

E. *Johnson* Factors Modification

Defendant argues that the lodestar should be reduced because Plaintiff had limited success (Def.'s Resp. to Pl.'s Mot. for Atty's' Fees at 13-15). However, Defendant's position is primarily rooted in the mistaken belief that Plaintiff pursued a "pattern and practice" claim in addition to her two promotion claims. Plaintiff did not present a pattern and practice claim. Rather, she presented pattern and practice evidence to provide historical perspective and context that supported her two promotion claims.

As stated above, Plaintiff claimed that she was passed over for detective promotions in November and December of 2003. However, the jury found that only the November 2003 decision to deny Plaintiff a detective position was gender discrimination that violated the Fourteenth Amendment and the Texas Labor Code. Still, the fact that Plaintiff's December 2003 discrimination claim failed is not necessarily a sufficient reason to reduce the lodestar amount.

Plaintiff's November and December 2003 promotion claims involved many of the same core facts, and were based on related legal theories. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983); *Edwards v. Aaron Rents, Inc.*, 482 F. Supp. 2d 803, 812 (W.D. Tex. 2006). So, the lawsuit cannot be viewed as a series of discrete claims tabulated into wins and losses. *See Hensley*, 461 U.S. at 435. Instead, the Court must focus on the significance of the overall relief obtained by the Plaintiff in relation to the hours her counsel spent on the litigation. *See Hensley*, 461 U.S. at 435.

Plaintiff obtained significant relief. The primary objective of her lawsuit was to prove that the Beaumont Police Department discriminated against her because of her gender. Based on

the jury verdict, she accomplished this objective. The jury also gave Plaintiff monetary relief, awarding $150,000.00, which was later reduced to $75,000.00 based on the election of remedies doctrine. While this amount does not represent a huge award, Plaintiff never expected nor demanded colossal economic damages.[9] In short, Plaintiff prevailed on some, but not all of her claims; and managed to achieve the central objective of her case by proving discrimination. The Court finds that Plaintiff achieved a level of success that is not disproportionate to the hours spent by Plaintiff's counsel on the litigation.

For these reasons, the Court finds that the "degree of success" factor does not suggest a reduction of the lodestar.

The parties have not argued that any of the other *Johnson* factors favors an upward or downward adjustment of the lodestar. Still, the Court has considered them on its own initiative; and, having done so, finds that none of the other factors counsel in favor of a modification of the lodestar. Accordingly, the lodestar remains presumptively reasonable and will not be disturbed.

[THIS SPACE INTENTIONALLY BLANK]

[DISCUSSION CONTINUES ON FOLLOWING PAGE]

---

[9] In August 2008, Plaintiff made a settlement offer of $185,000.00.

F. <u>Costs & Expenses</u>

Finally, Plaintiff seeks litigation costs and expenses totaling $15,873.11, itemized as follows:

| Cost or Expense | Amount |
| --- | --- |
| Transcripts | $5,157.48 |
| Lexis Nexis | $1,093.85 |
| Fees of the Clerk | $250.00 |
| PACER | $6.96 |
| Photocopies | $2,299.89 |
| Document Scanning | $311.58 |
| Witness Fees | $204.82 |
| Process Server | $525.00 |
| Postage & Shipping | $54.53 |
| Long Distance Telephone | $52.04 |
| Jury Consultant | $925.00 |
| Conference Room Rental | $430.19 |
| Travel & Mileage | $2,051.11 |
| Parking Fees | $72.00 |
| Trial Accommodations | $2,002.00 |
| Meals | $302.17 |
| **Total** | **$15,873.11** |

Under Federal Rule of Civil Procedure 54(d), costs are to be awarded to the prevailing party as a matter of course, unless the court directs otherwise. *See* Fed. R. Civ. P. 54(d); *Energy Mgmt. Corp. v. City of Shreveport,* 467 F.3d 471, 483 (5th Cir. 2006) (citing *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1017 (5th Cir. 1992)). But, a court's discretion to award costs is generally limited to those items listed in 28 U.S.C. § 1920. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). The statute provides the following recoverable costs:

> (1) fees of the clerk and marshal; (2) fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and copies of papers necessarily obtained for use in the case; (5) docket fees; and (6) compensation of court appointed experts, interpreters, and special interpretation services.

*Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512 (5th Cir. 2001) (citing 28 U.S.C. § 1920).

In addition to these costs, the Fifth Circuit has long held that "[a]ll reasonable out-of-pocket expenses, including charges for photocopying, paralegal assistance, travel, and telephone are plainly recoverable in section 1988 fee awards because they are part of the costs normally charged to a fee paying client." *Associated Builders & Contractors of La., Inc. v. Orleans Parish Sch. Bd.,* 919 F.2d 374, 380 (5th Cir. 1990) (citing *Int'l Woodworkers of Am. v. Champion Int'l Corp.*, 790 F.2d 1174, 1185 (5th Cir. 1986)); *Missouri v. Jenkins*, 491 U.S. 274 (1989)). Defendant argues that this well-established principle was implicitly overturned by the Supreme Court in *Arlington Central School District Board of Education v. Murphy*, 548 U.S. 291 (2006); a case in which the high court determined that the fee-shifting provision of the Individuals with Disability Education Act, 20 U.S.C. § 1415(i)(3)(B), does not permit recovery of expert fees as

costs. There is no need to dwell on the specific contours of the argument here—the Court is not persuaded by them. *Murphy*'s holding is not as broad or significant as Defendant suggests. Further, it is clear that since *Murphy*, courts in the Fifth Circuit have continued to adhere to the principle that reasonable out-of-pocket expenses that are part of the costs normally charged to a fee-paying client may be recovered as part of an attorney's fee award. *See, e.g., Miles-Hickman v. David Powers Homes, Inc.*, No. H-07-0754, 2009 U.S. Dist. LEXIS 31533, at *21-23, 2009 WL 995632 (S.D. Tex. April 14, 2009); *Shepherd v. Dallas County*, No. 3:05-CV-1442-D, 2009 U.S. Dist. LEXIS 36713, at *47-54, 2009 WL 977295 (N.D. Tex. Jan. 22, 2009); *Humphrey v. United Way*, No. H-05-758, 2008 U.S. Dist. LEXIS 98314, at *23-24, 2008 WL 5070057 (S.D. Tex. Nov. 20, 2008); *Black Heritage Society v. City of Houston*, 2008 U.S. Dist. LEXIS 53598, at *22 (S.D. Tex. July 11, 2008); *Freeman v. Trussco, Inc.*, No. CIV A 05-0483, 2006 U.S. Dist. LEXIS 65733, at *2, 2006 WL 2548181 (W.D. La. Aug. 31, 2006).

As the party seeking costs, Plaintiff has the burden to support its request for expenses with evidence documenting the costs incurred. *See Fogelman v. ARAMCO*, 920 F.2d 287, 285-86 (5th Cir. 1991). Whether costs and expenses are reasonable is left to the sound discretion of the trial judge. *See Associated Builders,* 919 F.2d at 380 (citing *Curtis v. Bill Hanna Ford, Inc.*, 822 F.2d 549, 553 (5th Cir. 1987)); *In re Hunt*, 754 F.2d 1290, 1294 (5th Cir. 1985).

(1) Undocumented Costs

In its objections to Plaintiff's Bill of Costs, Defendant argued that Plaintiff has failed to provide documentation for certain items in the Bill of Costs; in particular, a $925.00 charge for "Consulting (B&H)," and a $430.19 charge for "Conference Room Rental/Meals (B&H)."

Plaintiff subsequently provided supplementary documentation, in the form of invoices and proof of payment. As such, the Court finds that Plaintiff has met its burden to support its request for these expenses. They are recoverable as out-of-pocket expenses.

(2) Travel Costs

Next, Defendant challenges Plaintiff's entitlement to travel costs. The basis of this challenge is not that the costs are undocumented. Instead, Defendant again argues that Plaintiff should not be paid at all for travel because local counsel was available and could have handled the case. The Court already rejected this argument, and incorporates its prior analysis to reject it again here.

Plaintiff has provided sufficient documentation to support its travel costs and expenses (including mileage, meals, parking and accommodations), which the Court finds to be reasonable and recoverable as out-of-pocket expenses.

(3) Electronic Reasearch

Plaintiff seeks to recover $1,093.85 for electronic research on Lexis Nexis. Such expenses are also recoverable as out-of-pocket expenses, since they are normally charged to fee-paying clients. *See Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, 63 F.3d 516, 526 (7th Cir. 1995); *Shepherd v. Dallas County*, 2009 U.S. Dist. LEXIS 36713, at *53-54 (N.D. Tex. Jan. 22, 2009). The Court finds that $1,093.85 is reasonable for such expenses.

(4) Private Process Server

Plaintiff also seeks to recover $525.00 for private process server fees. Such fees are not recoverable as costs under 42 U.S.C. § 1920. *Watkins v. Input/Output, Inc.*, 531 F. Supp. 2d 777 (S.D. Tex. 2007) (Hittner, J.); *Halliburton Energy Servs., Inc. v. M-I, LLC*, 244 F.R.D. 369, 371 (E.D. Tex. 2007); *Maurice Mitchell Innovations, L.P. v. Intel Corp.*, 491 F. Supp. 2d 684 (E.D. Tex. 2007) (citing *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 257 (5th Cir. 1997)). However, they are recoverable as out-of-pocket expenses, and are awarded here on that basis. *See Beamon v. Ridgeland*, 666 F. Supp. 937, 946 (S.D. Miss. 1987).

(5) Photocopy Costs

Costs of photocopies necessarily obtained for use in the litigation are recoverable upon proof of necessity. 28 U.S.C. § 1920(4); *Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994). The party seeking costs need not "identify every xerox copy made for use in the course of legal proceedings." *Fogleman*, 920 F.2d at 286. However, it must demonstrate some connection between the costs incurred and the litigation. *Id.*; *Maurice Mitchell Innovations, L.P. v. Intel Corp.*, 491 F. Supp. 2d 684, 687 (E.D. Tex. 2007)).

The Court has already discussed the voluminous number of documents produced through discovery in this case, and finds that the total copying costs of $881.00 sought by Plaintiff are consistent with the nature and history of this litigation. They will be awarded in full.

(6) Postage & Long Distance

Plaintiff seeks the reasonable amounts of $54.53 for postage and shipping, and $52.04 for long distance telephone charges. The Fifth Circuit has specifically named postage and long distance telephone charges as out-of-pocket expenses that are normally charged to a fee-paying client. *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001). Accordingly, they may be recovered as expenses here.

### (7) PACER Charges

Finally, Plaintiff seeks $6.96 for use of the Federal Courts' PACER system. The Court finds that these PACER charges are recoverable fees of the clerk under 28 U.S.C. § 1920(1). *See Ducote Jax Holdings, L.L.C. v. Bank One Corp.*, No. 04-1943, 2007 U.S. Dist. LEXIS 87367, at *23, 2007 WL 4233683 (E.D. La. Nov. 28, 2007), *aff'd*, 2009 WL 1744491 (5th Cir. June 19, 2009).

### (8) Conclusion on Costs

For the foregoing reasons, the Court finds that Plaintiff has shown her entitlement to reasonable costs and litigation-related expenses in the full amount requested: $15,873.11.

## IV. CONCLUSION & ORDER

**IT IS THEREFORE ORDERED** that *Plaintiff's Motion for Reasonable Attorneys' Fees and Costs, and Memorandum in Support* [Clerk's Docket No. 198] is **GRANTED**, consistent with the foregoing discussion.

**IT IS FURTHER ORDERED** that Defendant shall pay Plaintiff **$428,421.75** in attorneys' fees and **$15,873.11** in costs and expenses.

**IT IS FURTHER ORDERED** that Plaintiff is entitled to postjudgment interest on the total award of **$444,294.86**, running from January 15, 2009, the date on which final judgment was entered. *See La. Power & Light,* 50 F.3d 319, 332 (5th Cir. 1995) (quoting *Copper Liquor, Inc. v. Adolph Coors, Co.*, 701 F.2d 542 (5th Cir. 1983)).

**SO ORDERED**.

**SIGNED** this the 20 day of **July, 2009.**

Thad Heartfield
United States District Judge